**COUNSEL FINANCIAL SERVICES, L.L.C., Appellant**

**v.**

**DAVID McQUADE LEIBOWITZ, P.C., and David McQuade Leibowitz, Appellees.**

Nos. 04–09–00079–CV, 04–09–00080–CV.

Court of Appeals of Texas, San Antonio.

Feb. 10, 2010.

Rehearing Overruled March 30, 2010.

David B. West, Diann M. Bartek, Ellen B. Mitchell, Cox, Smith, Matthews, Incorporated, San Antonio, TX, for Appellant.

Peter J. Stanton, Law Offices of Peter J. Stanton, David McQuade Leibowitz, Law Offices of David McQuade Leibowitz, San Antonio, TX, for Appellees.

Sitting: KAREN ANGELINI, Justice,
STEVEN C. HILBIG, Justice,
MARIALYN BARNARD, Justice.

## OPINION

Opinion by: KAREN ANGELINI, Justice.

The issue in this appeal is whether the *Craddock* motion for new trial standard relating to default judgments applies to proceedings under the Uniform Enforcement of Foreign Judgments Act. We hold that it does not.

### BACKGROUND

Appellant Counsel Financial Services, L.L.C. ("CFS") provides case financing for attorneys. In 2004, CFS and David McQuade Leibowitz, P.C. entered into a loan agreement whereby CFS lent the professional corporation over $4.5 million. In September 2007, CFS and the professional corporation entered into a Fourth Amended and Restated Revolving Promissory Note in an amount of over $5 million. Leibowitz signed a personal guaranty of the entire amount of the Note.

On August 29, 2008, claiming that David McQuade Leibowitz and his professional corporation (hereinafter "Leibowitz") were in default of the Note, CFS filed in New York state court a Motion for Summary Judgment in Lieu of Complaint pursuant to Rule 3213 of the New York Civil Practice Law and Rules.[1] On September 4, 2008, Leibowitz was properly served with the Motion for Summary Judgment in Lieu of Complaint. His deadline to respond was October 27, 2008; however, on October 27, 2008, Leibowitz failed to respond.

On November 5, 2008, Leibowitz filed an "Advisory to the Court," informing the New York state court that on "October 27, 2008, defendants agreed to and accepted an offer by plaintiff of a renewal of Defendant David McQuade Leibowitz P.C.'s line of credit, which is the subject matter of this pending action, thus rendering the pending action moot." On November 6, 2008, CFS's Motion for Summary Judgment in Lieu of Complaint was set for a hearing. Leibowitz appeared by telephone and informed the court that the matter had been resolved. CFS's attorney disagreed, stating that it had not, and asked for the court to grant CFS's motion. The court then gave Leibowitz an additional week to file papers responsive to the summary judgment motion. Thus, Leibowitz had until November 13, 2008, to file responsive papers. However, on November 13, 2008, Leibowitz, once again, failed to file responsive papers.

On November 14, 2008, Leibowitz hired an attorney who practices in New York. On November 20, 2008, his attorney appeared at the second hearing on CFS's Motion for Summary Judgment in Lieu of Complaint and asked for additional time to file responsive papers. The trial court denied the motion for additional time and

---

1. Rule 3213 provides that "[w]hen an action is based upon an instrument for the payment of money only or upon any judgment, the plaintiff may serve with the summons a notice of motion for summary judgment and the supporting papers in lieu of a complaint. The summons served with such motion papers shall require the defendant to submit answering papers on the motion within the time provided in the notice of motion. The minimum time such motion shall be noticed to be heard shall be as provided by subdivision (a) of rule 320 for making an appearance...." N.Y. C.P.L.R. 3213 (McKinney 2009).

granted CFS's motion for summary judgment.

On November 25, 2008, the New York court signed a judgment in favor of CFS:

The Plaintiff, COUNSEL FINANCIAL SERVICES, LLC, having moved by and through its attorneys, for an Order pursuant to CPLR 3213 granting the entry of judgment against the Defendants, DAVID MCQUADE LEIBOWITZ, P.C. and DAVID MCQUADE LEIBOWITZ, ESQ., and for such other, further and different relief as to the Court may be deemed just and proper; and said motion having first come on to be heard before this Court at a Special Term held in and for the County of Erie on November 6, 2008, with Philip B. Abramowitz, Esq. appearing for the Plaintiff and David McQuade Leibowitz, Esq. appearing by telephone for the defendants, this Court having granted David McQuade Leibowitz's request for a two week adjournment until November 20, 2008, so that the defendants could submit opposition papers in addition to their unverified "Advisory to the Court" dated November 5, 2008, upon the Court's specific condition that any and all additional opposition papers were required to be filed by November 13, 2008; and the defendants having failed to file any additional opposition papers by the November 13, 2008, due date; and Bruce S. Zeftel, Esq., having been retained by defendants on November 14, 2008; and

This matter having come before the Court on November 20, 2008, with Philip B. Abramowitz, Esq., appearing for Plaintiff and Bruce S. Zeftel, Esq., appearing for defendants.

NOW, upon:

1. Plaintiff's Summons and Notice of Motion for Summary Judgment in Lieu of Complaint dated August 29, 2008, and

2. Affidavits of Philip B. Abramowitz, Esq., and Michael P. Callahan, in support of Plaintiffs Motion for Summary Judgment dated August 29, 2008, with attached exhibits, and

3. Unverified Advisory to the Court dated November 5, 2008, and

4. Statement for Judgment verified by Philip B. Abramowitz, Esq., on November 20, 2008, showing costs and disbursements; it is hereby

ORDERED and ADJUDGED, that Plaintiff's Motion for Summary Judgment in the amount of $5,506,180.96, including interest through November 20, 2008 of $432,255.92 and late fees and returned fund fees of $68,079.59, plus costs allowed by statute of $200, fee for index number of $210, fee for RJI of $95, plus expense for service of summons with notice of $115, totaling $620, for a total sum of $5,506,800.96, against each Defendant, DAVID MCQUADE LEIBOWITZ, P.C. and DAVID MCQUADE LEIBOWITZ, ESQ., be and hereby is in all respects GRANTED.

AND, IT IS ORDERED, that Judgment in the amount of $5,506,800.96 be entered by the Clerk of the Court in favor of COUNSEL FINANCIAL SERVICES, LLC as against each Defendant DAVID MCQUADE LEIBOWITZ, P.C. and DAVID MCQUADE LEIBOWITZ, ESQ.,

AND, that the Plaintiff, COUNSEL FINANCIAL SERVICES, LLC, have execution therefore.

SO ORDERED.

On December 2, 2008, pursuant to the Uniform Enforcement of Foreign Judgments Act ("UEFJA"), CFS filed an authenticated copy of the New York judgment in Texas state district court. On December 29, 2008, Leibowitz filed a Mo-

tion for Relief From Enforcement of For-
eign Judgment and argued that the trial
court should apply the *Craddock* motion
for new trial standard.[2]  On January 26,
2009, at a hearing on his motion, Leibowitz
argued that because he had presented evi-
dence sufficient under the *Craddock* mo-
tion for new trial standard, the trial court
should refuse to enforce the New York
judgment against him.  The trial court
agreed, and on January 30, 2009, signed an
Order Granting Motion for Relief From
Enforcement of Foreign Judgment:

> ON THIS DAY CAME ON TO BE
> HEARD the Motion for Relief from En-
> forcement of Foreign Judgment ("the
> Motion") filed by DAVID MCQUADE
> LEIBOWITZ, and DAVID MCQUADE
> LEIBOWITZ, P.C. The Court after con-
> sidering the Motion and the evidence
> presented thereon is of the opinion that
> the relief requested therein should be
> and hereby is GRANTED as follows.

> In granting this relief the Court finds
> as follows:

> 1. The Defendants are entitled to di-
> rectly attack the New York State
> Court Judgment that the Plaintiff
> seeks to domesticate ("the Judgment")
> upon any grounds that the Judgment
> can be attacked under Texas law.

> 2. Under Texas law, the Defendants
> have established their entitlement to a
> new trial and to have the judgment
> vacated because:

> a. The Defendants' default in the
> New York Action is not the result
> of conscious indifference, but is the
> result of accident or mistake.

> b. The Defendants have established
> and set up the meritorious defenses
> that the underlying indebtedness
> was not due, as alleged by the
> Plaintiff, that the underlying note
> was not in default as of the date suit
> was filed, and that the amounts al-
> leged to be owed on the note in
> question were not actually owed.

IT IS THEREFORE ORDERED AD-
JUDGED AND DECREED that the
Judgment is not entitled to full faith and
credit and cannot be enforced in the
State of Texas because it is subject to
the defenses allowed pursuant to [sec-
tion] 35.003(c) of the Texas Civil Prac-
tice and Remedies Code, which the De-
fendants have established by clear and
convincing evidence.  Any relief not
herein expressly granted is hereby de-
nied.  IT IS SO ORDERED AS
AFORESAID.

CFS appeals the trial court's order re-
fusing to enforce the New York judgment.[3]

### CRADDOCK

■ Pursuant to *Craddock v. Sunshine
Bus Lines, Inc.*, 134 Tex. 388, 133 S.W.2d
124, 126 (1939), where a defendant had
proper notice, a default judgment should
be set aside and a new trial granted if (1)
the failure to answer or appear at trial was
not intentional or the result of conscious
indifference but was due to a mistake or
accident; (2) the defendant sets up a meri-
torious defense; and (3) the motion is filed
at such time that granting a new trial
would not result in delay or otherwise
injure the plaintiff.  *See In re R.R.*, 209
S.W.3d 112, 114–15 (Tex.2006) (applying

---

**2.** Leibowitz also claimed the judgment was
obtained through extrinsic fraud.  He never
advanced this argument at the hearing on his
motion, and he presented no evidence of ex-
trinsic fraud at the hearing.               .

**3.** Meanwhile, in New York, Leibowitz appeal-
ed the summary judgment against him.  At-
tached to his surreply brief is a copy of the
New York appellate court's opinion, issued on
November 20, 2009, which affirmed the lower
court's judgment.

*Craddock* standard). Leibowitz argues that because CFS filed its UEFJA proceeding less than thirty days after the New York judgment was signed, the *Craddock* motion for new trial standard applies. We disagree.

The United States Constitution requires each state to give full faith and credit to the public acts, records, and judicial proceedings of every other state. *See* U.S. Const. art. IV, § 1. Texas recognizes two methods of enforcing a foreign judgment. *Charles Brown, L.L.P. v. Lanier Worldwide, Inc.*, 124 S.W.3d 883, 902 (Tex. App.-Houston [14th Dist.] 2004, no pet.). First, a judgment creditor may bring a common law action to enforce a judgment. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 35.008 (Vernon 2008) ("A judgment creditor retains the right to bring an action to enforce a judgment instead of proceeding under [the UEFJA]."). "When he does so, his petition as plaintiff initiates the action; the judgment debtor, as defendant, can assert his defenses; and a judgment results." *Moncrief v. Harvey*, 805 S.W.2d 20, 22 (Tex.App.-Dallas 1991, no writ). Second, a judgment creditor may enforce a foreign judgment under the UEFJA as provided in Chapter 35 of the Texas Civil Practice and Remedies Code. *Id.; see* TEX. CIV. PRAC. & REM.CODE ANN. §§ 35.001–35.008 (Vernon 2008). When a judgment creditor chooses to proceed under the UEFJA, the filing of a foreign judgment is in the "nature of both a plaintiff's original petition and a final judgment: the filing initiates the enforcement proceeding, but it also instantly creates a Texas judgment that is enforceable." *Moncrief*, 805 S.W.2d at 22. Thus, the UEFJA "provides 'a speedy and economical method of doing that which . . . is required . . . by the Constitution of the United States,' i.e., giving full faith and credit to the judgments of other state courts." *Reading &*

*Bates Constr. Co. v. Baker Energy Res. Corp.*, 976 S.W.2d 702, 712 (Tex.App.-Houston [1st Dist.] 1998, pet. denied) (quoting UNIF. FOREIGN JUDGMENTS ACT, prefatory note, 13 U.L.A. 150 (1986)) (alterations in original).

A foreign judgment filed under the UEFJA is treated in the same manner as a judgment of the court to which the foreign judgment is filed. TEX. CIV. PRAC. & REM.CODE ANN. § 35.003(b) (Vernon 2008). And, pursuant to section 35.003(c) of the UEFJA, such a judgment has "the same effect and is subject to the same procedures, defenses, and proceedings for reopening, vacating, staying, enforcing, or satisfying a judgment as a judgment of the court in which it is filed." *Id.* § 35.003(c).

In his Motion for Relief From Enforcement of Foreign Judgment, Leibowitz argued that pursuant to section 35.003(c) of the UEFJA, he is entitled to raise any procedure, defense, or proceeding for reopening or vacating the New York judgment that he could have raised in the Texas court. Thus, according to Leibowitz, because CFS filed its enforcement action under the UEFJA less than thirty days from the time the New York judgment was signed, the *Craddock* standard should apply. Leibowitz reasons that "[i]f the default judgment had been [signed] by a Texas court, [he] would have [had] every right to defend the enforcement of the judgment (within thirty days of its entry) by the filing of a motion for new trial." In essence, Leibowitz asked the Texas court to treat his motion for relief from enforcement as a direct attack on the New York judgment.

In response, CFS argued that (1) *Craddock* is not one of the recognized exceptions to full faith and credit; (2) applying the *Craddock* standard is like a direct attack on the foreign judgment that impermissibly goes to the merits of the original

controversy; and (3) even if *Craddock* did apply to actions under the UEFJA, the New York judgment was not a default judgment that would fall under *Craddock*.

The trial court agreed with Leibowitz, and while it clearly could not order a New York court to grant Leibowitz a new trial, *see Moncrief*, 805 S.W.2d at 22 n. 2, it found that pursuant to *Craddock*, Leibowitz was "entitled" to a new trial and to have the New York judgment vacated. Therefore, the trial court refused to enforce the New York judgment.

Under the UEFJA, the party seeking to enforce a foreign judgment has the initial burden to present a judgment that appears on its face to be a final, valid, and subsisting judgment. *Russo v. Dear*, 105 S.W.3d 43, 46 (Tex.App.-Dallas 2003, pet. denied). The burden then shifts to the judgment debtor to prove by clear and convincing evidence that the foreign judgment should not be given full faith and credit. *Mindis Metals, Inc. v. Oilfield Motor & Control, Inc.*, 132 S.W.3d 477, 484 (Tex.App.-Houston [14th Dist.] 2004, pet. denied). There are five well-established exceptions to full faith and credit requirements: (1) the foreign judgment is interlocutory; (2) the foreign judgment is subject to modification under the law of the rendering state; (3) the rendering state court lacked jurisdiction; (4) the foreign judgment was procured by extrinsic fraud; and (5) pursuant to section 35.003(c) of the Texas Civil Practice and Remedies Code, the period of time to file the foreign judgment had expired. *Id.* Leibowitz did not provide any evidence of these exceptions at the hearing on his motion. Instead, he argued that a sixth *Craddock* exception should be created.

For support, Leibowitz cites *Moncrief v. Harvey*, 805 S.W.2d 20, 23 (Tex.App.-Dallas 1991, no writ), and *Tracy v. Top Drawer Medical Art, Inc.*, No. 08–02–00273–CV, 2003 WL 22361477 (Tex.App.-El Paso 2003, no pet.), which he claims stand for the proposition that pursuant to section 35.003(c) of the UEFJA, a judgment debtor's motion to contest recognition of a foreign judgment may be treated like a direct attack on the foreign judgment. However, neither *Moncrief* nor *Tracy* stand for such a proposition.

In *Moncrief*, 805 S.W.2d at 22, the issue was whether the Dallas Court of Appeals had jurisdiction over the appeal. The judgment creditor had filed an authenticated foreign judgment pursuant to the UEFJA. *Id.* The judgment debtor then filed a motion asking the Texas court to suspend execution of the foreign judgment, which the judgment creditor argued on appeal could not operate as a motion for new trial. *Id.* at 22, 23. And, because no motion for new trial had been filed, the judgment creditor argued that the notice of appeal was untimely and the appellate court had no jurisdiction over the appeal. *Id.* at 22.

In holding that a judgment debtor's motion to suspend execution operates procedurally like a motion for new trial in the context of a UEFJA proceeding, the Dallas Court of Appeals explained that "the absence of express statutory procedures for defending against a foreign judgment filed in a Texas court often leaves the judgment debtor in a procedural quandary." *Id.* (quotation omitted). Because the filing of the foreign judgment constitutes both the original petition and a final judgment that is enforceable, "a judgment creditor could file a foreign judgment and thereafter obtain a writ of execution without the trial judge's ever being aware of it." *Id.* The court noted that although the judgment debtor is "statutorily empowered with the same defenses and proceedings for reopening, vacating, or staying a filed judgment" pursuant to section 35.003(c), "[i]t is small consolation ... to have de-

fenses or proceedings without any window of time in which to assert them." *Id.* Yet, the court noted that it must "presume that, in enacting section 35.003(c), the Legislature intended a just and reasonable result." *Id.* "Therefore, because filing a foreign judgment has the effect of initiating an enforcement proceeding and entering a final Texas judgment simultaneously, the Legislature must have intended to empower the judgment debtor with all those defenses and proceedings for reopening, vacating, or staying a judgment that any judgment debtor can bring postjudgment." *Id.* at 23. The court analogized "the debtor's position in a 35.003 proceeding to the position of one who has suffered a no-answer default judgment: there may not have been any opportunity for such a debtor to have defended against the judgment in a trial, but he is not cut off from any postjudgment procedures for attacking the judgment." *Id.*

The court explained that generally, the first step for a judgment debtor to attack a judgment in place is to file a motion for new trial. *Id.* However, in an action under the UEFJA, a Texas court cannot order a new trial to be conducted by a foreign court. Thus, the court rejected the judgment creditor's argument that "because a motion to reopen, vacate, or stay a judgment is not a motion that seeks a substantive change in the judgment, it cannot operate as a motion for new trial," but instead constituted a motion to supersede the judgment under Texas Rule of Appellate Procedure 47. *Id.* In rejecting this argument, the court noted that any attempt by the judgment debtor "to ask for new trial from a Texas court, when the original trial was conducted in a Wyoming court, would be ineffective," as a Texas court cannot order a Wyoming court to grant a new trial. *Id.* The court explained that in initiating the UEFJA proceeding, the judgment creditor's purpose was not

to have his rights adjudicated in Texas; he had already had them adjudicated in Wyoming. *Id.* Instead, he asked only that his judgment be enforced in Texas. *Id.* Further, when the judgment debtor asked the Texas courts to stay execution of the judgment, "he was asking them to undo everything that [the judgment creditor] had accomplished by filing the judgment in Texas." *Id.* Thus, the Dallas Court of Appeals concluded that "any motion to contest the recognition of a foreign judgment, filed within thirty days after the filing of the foreign judgment, *operates as a motion for new trial in the context of a section 35.003 proceeding*" *Id.* (emphasis added).

In so holding, the court noted that policy reasons supported such reasoning. *Id.* If a motion to contest enforcement of the judgment was not treated procedurally as a motion for new trial, then a judgment debtor would have to file a notice of appeal within thirty days from the time the foreign judgment was first filed or risk waiving his right to appeal. *Id.* at 23–24. To compel a judgment debtor to perfect an appeal within thirty days of the filing of the foreign judgment would minimize the trial court's opportunity to review the debtor's motion to contest recognition of the foreign judgment. *Id.* at 24. Instead, the court explained that a better policy is for the trial court to have the same extended period of time to review the motion to contest recognition as it would have to review a motion for new trial. *Id.* "Indeed, until the judgment debtor presses to have his motion to contest recognition heard, the trial court is probably not even aware that the foreign judgment has been filed." *Id.* "The only alternative would be to compel a judgment debtor to file a motion for new trial formally complying with Rule 320 of the Texas Rules of Civil Procedure, which," the court noted, "would

be to require the debtor to file a useless motion that could not possibly be granted." *Id.* Therefore, the Dallas Court of Appeals held that the judgment debtor's motion to suspend execution operated procedurally as a motion for new trial, extending the trial court's plenary power until thirty days after the motion was overruled. *Id.*

Thus, *Moncrief does* not stand for the proposition that a judgment debtor's motion to stop enforcement from a foreign judgment can be treated like a direct attack on a foreign judgment. Instead, *Moncrief* merely explains that for the purpose of appellate timetables, a motion to stop enforcement of a judgment filed pursuant to the UEFJA operates procedurally as a motion for new trial.

Leibowitz also relies on *Tracy v. Top Drawer Medical Art, Inc.,* No. 08–02–00273–CV, 2003 WL 22361477 (Tex.App.-El Paso 2003, no pet.), a memorandum opinion by the El Paso Court of Appeals. He cites the following language from *Tracy:* "a motion to contest recognition of a foreign judgment filed under the UEFJA operates like any post-judgment motion that directly attacks a final judgment in Texas in a post-judgment proceeding." *Id.* at *2. *Tracy,* however, does not stand for the proposition that a party can bring a direct attack on a foreign judgment. *Tracy,* like *Moncrief,* dealt with appellate timetables and the trial court's plenary power. In holding that the trial court had lost plenary power over the UEFJA proceeding, the court of appeals in *Tracy* explained that the judgment debtor's motion operated *procedurally* like a motion for new trial:

> As the court in *Moncrief v. Harvey* explained, any motion to contest the recognition of a foreign judgment, a post-judgment motion, filed within thirty days after the filing of the foreign judgment, operates as a motion for new trial

in the context of a Section 35.003 proceeding. In discussing its policy reasons for treating a motion to contest recognition of a foreign judgment *as the functional equivalent of a motion for new trial,* the *Moncrief* court noted that doing so extends the appellate timetable for perfecting an appeal and provides the trial court an opportunity to review the debtor's motion to contest recognition in the same extended period of time as it would have to review a motion for new trial in an ordinary case.

On appeal, [the judgment debtor] contends that since his motion contesting recognition of the foreign judgment did not request a new trial or intend to stay, vacate, or change the foreign judgment, he should not be held to adhere to the procedures set out in *Moncrief.* Rather, [the judgment debtor] asserts his motion was a collateral attack seeking to avoid the binding force of the judgment by conclusively establishing that the Wisconsin court lacked jurisdiction and as such, the judgment was unenforceable in Texas. [The judgment debtor] points out that there is neither a set procedure for a collateral attack nor any statute of limitations. While we agree that a challenge to the enforcement of a foreign judgment is in the nature of a collateral attack in that a defendant may challenge the sister state's jurisdiction to render the judgment, [the judgment debtor]'s motion was *procedurally in the same posture as any post-judgment motion filed after a final judgment in Texas.* Under Section 35.003(c) of the Texas Civil Practice and Remedies Code, a filed foreign judgment has the same effect and is subject to the same procedures, defenses, and proceedings for reopening, vacating, staying, enforcing, or satisfying a judgment as a judgment of the court in which it is filed. In effect, a motion to contest recognition of a for-

eign judgment filed under the UEFJA *operates like any post-judgment motion that directly attacks a final judgment in Texas in a post-judgment proceeding.* *Id.* at *2 (emphasis added) (citations omitted). Thus, *Tracy* does not stand for the proposition that a judgment debtor can bring a direct attack on a foreign judgment, but instead stands for the proposition that a motion to contest recognition of a foreign judgment operates *procedurally* like a motion for new trial for purposes of appellate timetables and the trial court's plenary power over the matter.

Further, it is well established that when a judgment debtor brings a collateral attack, no defense that goes to the merits of the original controversy can be recognized. *EnviroPower, LLC v. Bear, Stearns & Co.,* 265 S.W.3d 16, 20 (Tex.App.-Houston [1st Dist.] 2008, no pet.); *Russo v. Dear,* 105 S.W.3d 43, 46 (Tex.App.-Dallas 2003, pet. denied). Even when a judgment debtor argues a recognized exception to the full faith and credit requirements in his motion to contest recognition, his exception cannot be recognized by a Texas court if it was fully and fairly litigated by the sister state. *See Russo,* 105 S.W.3d at 47 ("Even if [the judgment debtor] had argued in her brief that the Ohio trial court did not have personal jurisdiction over her, she may not raise that argument now in Texas because the Ohio trial court fully and fairly litigated that issue. The Texas court's scope of inquiry into the foreign court's jurisdiction is limited to whether questions of jurisdiction were fully and fairly litigated and finally decided by the sister state, and if so, personal jurisdiction may not be raised again in the Texas Court.").

Here, by using the *Craddock* standard, Leibowitz is bringing a defense that goes to the merits of the original controversy. He is attempting to relitigate the New York case. Such a standard cannot apply to full faith and credit actions. As explained by the Fourteenth Court of Appeals in *Mindis Metals, Inc. v. Oilfield Motor & Control, Inc.,* 132 S.W.3d 477, 485 (Tex.App.-Houston [14th Dist.] 2004, pet. denied), although a motion to vacate a filed foreign judgment is analogized to a motion for new trial and generally, a trial court has broad discretion to grant a motion for new trial, "allowing a trial court the same broad discretion to vacate a properly filed foreign judgment would override the constitutional requirement that a trial court give full faith and credit to the foreign judgment unless the debtor proves an exception by clear and convincing evidence." "Therefore, the UEFJA provision that a filed foreign judgment is subject to the same procedures, defenses, and proceedings for vacating a Texas judgment *refers to the procedural devices available to vacate a Texas judgment.*" *Id.* (emphasis added). "It cannot mean that the judgment can be vacated for any reason sufficient to support a traditional motion for new trial." *Id.*

Therefore, we hold that the *Craddock* standard does not apply to UEFJA proceedings.

## DUE PROCESS

Leibowitz also argues that the New York court deprived him of his rights under the Due Process Clause of the Fourteenth Amendment. According to Leibowitz, his testimony at the hearing "clearly shows that he did not get any notice that a default would occur on November 13, 2008." "The only thing he knew was what the Judge told him at the hearing on November 6, 2008."

For support, he cites the following language from *Playnation Play Systems v. Guajardo,* No. 13–06–00302–CV, 2007 WL 1439740, at *3 (Tex.App.-Corpus Christi 2007, no pet.): "If, however, the Texas

court finds that a foreign court lacked jurisdiction over the parties or property because it did not allow the defendant to appear, present his or her case, or be fully heard, then the judgment must be ruled null and void." *Playnation*, however, does not stand for the proposition that any time a judgment debtor can prove he was not allowed to fully present his case, the foreign judgment is void.

In *Playnation*, a Texas resident was sued in Georgia state court. *Id.* at *1. In Georgia court, he filed a motion to dismiss for lack of jurisdiction, arguing that he was not subject to personal jurisdiction in Georgia. *Id.* The Georgia court disagreed and held that he had the requisite minimum contacts with Georgia for it to assert jurisdiction. *Id.* The Texas resident never appealed the ruling or appeared at the subsequent trial. *Id.* The judgment creditor then attempted to domesticate the Georgia judgment, but the Texas trial court found that the Georgia court lacked personal jurisdiction over the Texas resident and declared the Georgia judgment void. *Id.*

The *Playnation* court first noted that pursuant to the Full Faith and Credit Clause, "when a challenge to a foreign court's judgment is made *on jurisdictional grounds*, the reviewing court is limited to inquiring as to whether *the jurisdictional question was fully and fairly litigated* and whether a final judgment *as to the jurisdictional issue* was rendered." *Id.* (emphasis added). The court explained that the United States Supreme Court stated in *Baldwin v. Iowa State Traveling Men's Ass'n*, 283 U.S. 522, 525, 51 S.Ct. 517, 75 L.Ed. 1244 (1931), that "[p]ublic policy dictates that there be an end of litigation; that those who have contested an issue shall be bound by the result of the contest, and that matters once tried shall be considered forever settled as between the par-

ties." *Playnation*, 2007 WL 1439740, at *3 (quoting *Baldwin* ). Thus, the *Playnation* court explained that after making sufficient jurisdictional inquiries, a court is constitutionally obligated to give "full faith and credit" to the merits issues decided by the foreign court. *Id.* And, pursuant to *Baldwin*, "[i]f a defendant is unsatisfied with the foreign court's ruling *as to jurisdiction*, the proper redress is to appeal within the foreign court's judicial system." *Id.* (emphasis added). "Texas applies the *Baldwin* precedent, and thus a properly proven foreign judgment must be recognized and given effect in a Texas court coextensive with that to which it is entitled in the rendering state." *Id.* "A Texas court must *limit itself to the jurisdictional question*, and must not investigate the merits of the sister state's decision." *Id.* (emphasis added).

The *Playnation* court then explained foreign judgments filed pursuant to the UEFJA are presumed to be valid, the recitations of the judgment itself control the rest of the record, and extrinsic evidence may not be used. *Id.* Thus, a "collateral attack fails if the judgment contains jurisdictional recitals, even if other parts of the record show a lack of jurisdiction." *Id.* On appeal, the judgment debtor argued that the default Georgia judgment was void because the recitals on the face of the judgment did not assert the trial court's jurisdiction. *Id.* at *4. The *Playnation* court disagreed, holding that the judgment's language appropriately recited jurisdictional facts. *Id.* Further, the *Playnation* court noted that "[i]t is clear that [the judgment debtor] was given an opportunity to 'fully and fairly' litigate his claim under the *Baldwin* test." *Id.* The court noted that the judgment debtor had voluntarily entered a limited appearance and motion to dismiss for lack of jurisdiction in Georgia. *Id.* According to the court, there was no evidence that he was prohibited

from presenting his case in the Georgia court, nor was there any evidence that he was not fully heard. *Id.* Further, the court noted that he had the right to appeal the judgment in Georgia, but chose not to exercise that right. *Id.*

Thus, *Playnation* stands for the proposition that even when a judgment debtor raises the recognized exception that the sister state court lacked jurisdiction, if that judgment debtor had been afforded the opportunity to fairly litigate the jurisdictional issue in the sister court, he cannot raise it again in Texas. *See also Russo,* 105 S.W.3d at 47 ("Even if [the judgment debtor] had argued in her brief that the Ohio trial court did not have personal jurisdiction over her, she may not raise that argument now in Texas because the Ohio trial court fully and fairly litigated that issue. The Texas court's scope of inquiry into the foreign court's jurisdiction is limited to whether questions of jurisdiction were fully and fairly litigated and finally decided by the sister state, and if so, personal jurisdiction may not be raised again in the Texas Court.") (emphasis added); *Adriano v. Finova Capital Corporation,* No. 04–02–00796–CV, 2003 WL 21696300, at *2 (Tex.App.-San Antonio 2003, pet. denied) ("In a collateral attack on a sister state's judgment, the defendant may not bring a defense that goes to the merits of the original controversy. This is true *even as to questions of jurisdiction if those questions had been fully and fairly litigated and finally decided in the sister court.*") (emphasis added).

■ Moreover, even if one could raise general due process considerations in a UEFJA proceeding, there is no evidence in this record to support lack of due process. Leibowitz testified that he was properly served, had notice of the deadline to file his response to the motion, had notice of the hearings, appeared (first, telephoni-

cally, and then through counsel) at the hearings, and was told by the New York judge that he had an additional week to file a response to CFS's motion. Leibowitz seems to be arguing that he was deprived of due process because he was "tricked" by CFS into thinking they had renewed the note. These are not due process concerns.

■ Finally, Leibowitz argues that if we agree with CFS, then we should remand this case so that he can ask the trial court for a stay. In response, CFS argues that Leibowitz waived this issue because he did not pursue this remedy either by argument or by presenting relevant evidence at the hearing. Leibowitz claims that he did pursue this relief because he requested in his prayer "any and all relief to which [he] maybe entitled to pursuant to § 35.003(c) of the Texas Civil Practice and Remedies Code."

Section 35.003(c) provides that "[a] filed foreign judgment has the same effect and is subject to the same procedures, defenses, and proceedings for reopening, vacating, staying, enforcing, or satisfying a judgment as a judgment of the court in which it is filed." TEX. CIV. PRAC. & REM. CODE ANN. § 35.003(c) (Vernon 2008). While Section 35.003(c) states that a filed foreign judgment is subject to the same procedure, defenses, and proceedings for staying a judgment as a judgment of the court in which it was filed, it is not the provision of the UEFJA that allows a trial court to stay enforcement of a foreign judgment. Section 35.006 is the provision that allows the trial court to stay enforcement of the judgment:

(a) If the judgment debtor shows the court that an appeal from the foreign judgment is pending or will be taken, that the time for taking an appeal has not expired, or that a stay of execution has been granted, has

been requested, or will be requested, *and proves that the judgment debtor has furnished or will furnish the security for the satisfaction of the judgment required by the state in which it was rendered*, the court shall stay enforcement of the foreign judgment until the appeal is concluded, the time for appeal expires, or the stay of execution expires or is vacated.

(b) If the judgment debtor shows the court a ground on which enforcement of a judgment of the court of this state would be stayed, the court shall stay enforcement of the foreign judgment for an appropriate period and require the same security for suspending enforcement of the judgment that is required in this state in accordance with Section 52.006.

TEX. CIV. PRAC. & REM.CODE ANN. § 35.006 (Vernon 2008) (emphasis added). Leibowitz did not cite Section 35.006 in his motion to stop enforcement of the foreign judgment or during the hearing on his motion. Further, Section 35.006 requires proof that "the judgment debtor has furnished or will furnish the security for the satisfaction of the judgment required by the state in which it was rendered." *Id.* Leibowitz testified at the hearing that he has not sought to file a supersedeas bond in either New York or Texas. We, therefore, decline to remand this matter to the trial court.

### CONCLUSION

We reverse the trial court's order and render judgment that the New York Judgment is entitled to full faith and credit and is fully enforceable in Texas.